**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **NOEMI FRANCO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-13-CV-00313-FM** |
| | § | |
| **JOSE A. KLUGE, OSCAR MARTINEZ,** | § | |
| **and MICHAEL LARA, in their individual** | § | |
| **capacities,** | § | |
| | § | |
| **Defendants.** | § | |

<u>**AMENDED MEMORANDUM OPINION AND ORDER**</u>[1]

On this day, the court considered Defendants Jose A. Kluge ("Kluge"), Oscar Martinez ("Martinez"), and Michael Lara's ("Lara" and collectively, "Defendants") "Defendants' Motion for Summary Judgment" ("Defendants' Motion") [ECF No. 84], filed February 18, 2015; "Plaintiff's Motion & Notice of Motion for Summary Judgment" ("Plaintiff's Motion") [ECF No. 85], filed February 18, 2015 by Plaintiff Noemi Franco ("Plaintiff"); "Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment" ("Defendants' Response") [ECF No. 86], filed March 4, 2015; "Plaintiff's Response in Opposition to Defendants['] Motion for Summary Judgment" [ECF No. 87], filed March 18, 2015; "Defendants' Supplemental Brief in Support of Their Motion for Summary Judgment" ("Defendants' Supplemental Brief") [ECF No. 90], filed March 27, 2015; and "Plaintiff's Supplemental Brief in Support of Her Motion for Summary Judgment" ("Plaintiff's Supplemental Brief") [ECF No. 92], filed April 6, 2015.

After considering the parties' Motions, Responses, Supplemental Briefs, and applicable law, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART** and Plaintiff's Motion is **DENIED**.

---

[1] The Memorandum Opinion and Order has been amended to clarify an ambiguity on page 25 of the original version regarding the remaining claims against Michael Lara.

I.     **BACKGROUND**

    *A.    Criminal Investigation*

On October 3, 2012, Pablo Fernandez ("Fernandez"), a resident of El Paso County, Texas, paid $300.00 to Plaintiff and Dean Franco (collectively, the "Francos") as a deposit for installing granite at his house.[2]  The Francos did not begin installing granite at Fernandez's house, and refused to answer or return his calls.[3]  Fernandez subsequently reported the Francos to the El Paso County Sheriff's Department ("Sheriff's Department") on February 26, 2013.[4]

Fernandez's report resulted in Officer Josefina Ramirez contacting Plaintiff.  After disputing whether or not this was a criminal matter and claiming it would cost Fernandez more money to take her to court than to drop the matter, Plaintiff agreed to reimburse Fernandez his deposit the following day.[5]

When Plaintiff failed to reimburse Fernandez on February 27, 2013, Ramirez returned to the Sheriff's Department to file a criminal complaint against the Francos.[6]  The case was assigned to Martinez on April 17, 2013.[7]  Martinez investigated the Francos and attempted to identify, locate, and communicate with them.[8]  Although Martinez was able to contact Plaintiff, she refused to be interviewed in person.[9]

On June 12, 2013, Fernandez returned to the Sheriff's Department to participate in photo lineups

---

[2] Defs.' Mot., "Declaration of Pablo Fernandez," at 1, ECF No. 84-1; *Id.*, Ex. A, "Incident / Investigation Report," at 4, ECF No. 84-3.

[3] Decl. Pablo Fernandez 1.

[4] Incident / Investigation Report 4.

[5] *Id.* at 4.

[6] *Id.* at 2–3.

[7] Defs.' Mot., "Declaration of Detective Oscar Martinez," at 2, ECF No. 84-2.

[8] Incident / Investigation Report 6–7.

[9] *Id.*

for the Francos.[10]  After Fernandez successfully identified the Francos, Martinez drafted arrest warrants

and accompanying affidavits for the Francos for engaging in a deceptive business practice in violation of

Tex. Penal Code § 32.42.  The warrants were signed by a county justice of the peace on June 17, 2013.[11]

Subsequently, the Sheriff's Department arranged a June 20, 2013 meeting with the Francos at the

Petro Truck Stop at 1295 North Horizon Boulevard in El Paso, on the premise that a customer wished to

meet with them.[12]  Kluge, Martinez, and Lara were present at the Petro station to arrest the Francos.[13]

According to Martinez, although Dean Franco was "quiet and cooperative," Plaintiff "was belligerent,

argumentative, resistant and demanded to see the arresting officers' proof of taking [their] oaths of

office."[14]  Martinez further testified that no arresting officer used excessive force on Plaintiff, and no

action was taken in response to her questioning the officers, "but solely what was necessary to arrest her

on the warrant."[15]

Plaintiff provides a significantly different account of the meeting.  According to Plaintiff, after

her vehicle was blocked by police officers, Kluge ordered her to step out of her vehicle and she declined

to do so.  Instead, Plaintiff demanded to see a certified copy of Kluge's oath of office, surety bond, and

sworn complaint with supporting affidavits.[16]  After repeating the dialogue several times, Kluge told

Plaintiff he would count to three before removing her from the vehicle.  Plaintiff responded by repeating

---

[10] *Id.* at 8.

[11] *Id.*; Defs.' Mot., Ex. B, "Warrant of Arrest," ECF No. 84-4.  Defendants have attached a warrant for Plaintiff, but not for Dean Franco, to their Motion.

[12] Decl. Detective Oscar Martinez 3; Incident / Investigation Report 9.

[13] Decl. Detective Oscar Martinez 3.

[14] *Id.*

[15] *Id.*

[16] "Plaintiff's Motion for Temporary Restraining Order," Ex. B, "Affidavit of Noemi Franco" ("Plaintiff's Affidavit"), at 1 ¶¶ 3–4.

her request for documents, this time including the arrest warrant.[17]  Kluge did not show Plaintiff any of

the documents, but instead counted to three and removed her from the vehicle by both of her arms and

handcuffed her.  Plaintiff alleges Kluge dislocated her right shoulder and bruised her right arm in the

process.[18]  Plaintiff further testifies Kluge shouted at her concerning his repeated requests for Plaintiff to

get out of her vehicle.[19]  After Plaintiff was arrested, her purse, vehicle, and other belongings were

searched and her vehicle was towed and impounded.[20]

The criminal cases against the Francos were dismissed on November 8, 2013 after they paid full

restitution to Fernandez.[21]

B.     Procedural History

On October 3, 2013, Plaintiff filed a *pro se* "Complaint for Deprivation of Rights Under 42

U.S.C. § 1983, et seq.; Compensatory Damages and Punitive Damages" ("Original Complaint"),

asserting claims against Lara, Martinez, Kluge, and the City of El Paso, Texas (the "City").  The Original

Complaint asserted nine claims against all parties: (1) a claim pursuant to 42 U.S.C. § 1983 ("section

1983") for retaliating against Plaintiff's exercise of her First Amendment rights; (2) a section 1983 claim

for unreasonably seizing Plaintiff's person; (3) a section 1983 claim for unreasonably seizing Plaintiff's

property without due process; (4) a section 1983 claim for an unreasonable search of Plaintiff's property;

(5) a section 1983 claim for unreasonably seizing Plaintiff's affects and papers;[22] (6) a Texas law claim

---

[17] *Id.* ¶ 5–6.

[18] *Id.* ¶ 6.

[19] *Id.* at 1–2 ¶ 7.

[20] *Id.* at 2 ¶¶ 13, 16;  Incident / Investigation Report 9.

[21] Defs.' Mot. 5 ¶ 14; *id.*, "Motion to Dismiss," ECF No. 84-6.

[22] Liberally construing Plaintiff's Original Complaint, it is unclear how this claim differs from Plaintiff's
claim for unreasonably seizing her property.  Regardless, Plaintiff is certainly contesting all Defendants' property
seizures in this case.

for assault and battery; (7) a Texas law claim for negligence; (8) a Texas law claim for false imprisonment; and (9) a Texas law claim for intentional infliction of emotional distress.[23]  Plaintiff requested compensatory, general, and punitive damages against all defendants, reasonable legal costs and fees, and "[s]uch other relief as [the] Court may find to be just and proper."[24]

On October 10, 2013, Plaintiff filed an "Ammended [sic] Complaint for Deprivation of Rights Under 42 U.S.C. § 1983, et seq.; Compensatory Damages and Punitive Damages" ("First Amended Complaint").[25]  The First Amended Complaint replaced the City as a defendant with the El Paso County Sheriff's Department, a subdivision of El Paso County, and added Richard D. Wiles ("Wiles"), Jesus E. Campa, Sylvia Aguilar, and William Ellis as defendants.[26]  The First Amended Complaint advanced against all defendants the same claims and requests for remedies propounded by the Original Complaint.[27]  The current basis for this controversy is "Plaintiff's Third Amended Complaint" ("Third Amended Complaint"), which Plaintiff was granted leave to file on February 4, 2014 and includes County Judge Veronica Escobar ("Judge Escobar") as a defendant.[28]  Except for advancing Plaintiff's claims against Judge Escobar, the Third Amended Complaint does not differ substantively from the First

---

[23] Original Compl. 9–14.

[24] *Id.* at 14–15.

[25] ECF No. 5.

[26] First Am. Compl. 1.  The lawsuit against the El Paso County Sheriff's Department was effectively against El Paso County.  "Order Denying Defendant El Paso County's Motion to Dismiss," at 4, ECF No. 31, entered Jan 7, 2014.

[27] *See generally* First Am. Compl.

[28] "Order Granting Plaintiff's Motion for Leave to File Amended Complaint," ECF No. 46; "Plaintiff's Third Amended Complaint," ECF No. 47.  The Third Amended Complaint is actually Plaintiff's fourth attempt to amend her pleading.

Amended Complaint.[29]

On April 25, 2014, the court dismissed all of Plaintiff's state law claims against all defendants and all of Plaintiff's section 1983 claims against all defendants except for Kluge, Martinez, and Lara.[30] The section 1983 claims against Kluge, Martinez, and Lara are the only remaining claims in Plaintiff's Third Amended Complaint.[31]

On February 18, 2015, Plaintiff and Defendants filed motions for summary judgment regarding Plaintiff's remaining claims. Defendants responded to Plaintiff's Motion on March 4, 2015, and Plaintiff responded to Defendants' Motion on March 18, 2015. Plaintiff and Defendants have supplemented the record with briefs on qualified immunity.

### C. *Defendants' Arguments*

Defendants argue that Plaintiff is unable to prove all of the elements of her claim for retaliating against her freedom of speech, as they were executing a lawfully-issued arrest warrant and the evidence negates any assertion that the arrest and associated actions were "for any reason other than to effectuate

---

[29] Plaintiff states her Third Amended Complaint incorporates the claims advanced in her Original Complaint. *See* Third Amended Complaint 2 ("The new complaint maintains the counts and allegations against the same defendants from the original complaint, but accounts for including [additional] Defendants . . . ."). Because Plaintiff's Third Amended Complaint refers to and adopts the claims made in her Original Complaint, those claims are maintained in Plaintiff's Third Amended Complaint. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.") (internal citation omitted).

[30] "Order Granting in Part and Denying in Part Second Motion to Dismiss of Defendant El Paso County and Motion to Dismiss All Defendants" ("Order"), at 25–26, ECF No. 65.

[31] Plaintiff's Motion requests compensatory and punitive damages against El Paso County. Pl.'s Mot. 1. However, the court has already found that Plaintiff "has not stated a plausible claim that Defendant El Paso County is liable for any alleged constitutional violations committed by Defendants," and furthermore, her claims against El Paso County have been dismissed with prejudice. Order 17. In addition, Plaintiff's Motion appears to request remedies for violations of her husband's rights. *See* Pl.'s Mot. 3 ("Defendants committed acts that clearly violated Plaintiff and [P]lain[t]iff's husband's Fourth Amendment rights and clearly established law."). As Defendants correctly note, Plaintiff's husband is not a party to this case and Plaintiff has not submitted any evidence she is entitled to remedies for violations of her husband's rights. Defs.' Resp. 3 ¶ 5; *see also Singleton v. Wulff*, 428 U.S. 106, 114 (1976) (quoting *Barrows v. Jackson*, 346 U.S. 249, 255 (1953)) ("Ordinarily, one may not claim standing . . . to vindicate the constitutional rights of some third party.").

the command of a judicial writ."[32]  With regard to Plaintiff's claims for unlawful searches and seizures,

they argue Plaintiff's arrest warrant satisfies the constitutional requirement that searches and seizures be

reasonable.[33]  Furthermore, Defendants aver the arrest warrant is properly supported by probable cause.[34]

Focusing on Plaintiff's claim for unreasonably seizing her person, Defendants claim the facts "show that

the arresting officers exercised great patience, not excessive force."[35]

To the extent Plaintiff has provided sufficient evidence for her claims, Defendants argue they are

protected by qualified immunity.[36]

D.      *Plaintiff's Arguments*

Plaintiff asserts she is able to adequately prove all elements of her claim for free speech

retaliation.[37]  Furthermore, Plaintiff asserts her arrest and all of the searches and seizures made during the

June 20th encounter were wrongful, in part because "[n]o case can go to court without an affidavit . . .

sworn and attested to."[38]  Plaintiff also claims her criminal case was "drawn into Court on false

pretense[s]."[39]  To the extent Defendants assert qualified immunity, Plaintiff argues the defense is

unwarranted.[40]

---

[32] Defs.' Mot 6–7 ¶ 19.

[33] *Id.* at 7 ¶ 20.

[34] *Id.* at 7–8 ¶ 23.

[35] *Id.* at 8 ¶ 26.

[36] *Id.* at 9 ¶¶ 27–28.  Defendants asserted this defense in their initial response to Plaintiff's lawsuit. "Original Answer and Affirmative Defenses of Defendants Jose A. Kluge, Oscar Martinez and Michael Lara," at 3 ¶ 11, ECF No. 17, filed Nov. 7, 2013.

[37] Pl.'s Mot. 1–2.

[38] *Id.* at 2 (emphasis removed).

[39] *Id.* (emphasis removed).

[40] *Id.* at 2–3.

## II.    APPLICABLE LAW

### A.    Summary Judgment

Summary judgment should be granted only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41]  "A genuine issue of material fact exists when there is evidence sufficient for a rational trier of fact to find for the non-moving party."[42]  The substantive law defines whether disputed facts are material.[43]  The party moving for summary judgment bears an initial burden of identifying those portions of the pleadings and any discovery on record, including any admissions on file, which he or she believes demonstrate the absence of a genuine issue of material fact.[44]  The court will "view all facts in the light most favorable to the non-moving party"[45] and draw all factual inferences in the nonmovant's favor.[46]  If the moving party cannot demonstrate the absence of a genuine issue of material fact, summary judgment is inappropriate.[47]

If the movant does meet this burden, however, the nonmovant must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."[48]  Accordingly, the "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by

---

[41] Fed. R. Civ. P. 56(a).

[42] *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 323 (5th Cir. 2002) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

[43] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[44] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[45] *Blow v. City of San Antonio, Tex.*, 236 F.3d 293, 296 (5th Cir. 2001).

[46] *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 582 (5th Cir. 2006).

[47] *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

[48] *Celotex*, 477 U.S. at 324 (internal quotation marks omitted).

unsubstantiated assertions, or by only a scintilla of evidence."[49]   "[T]he nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."[50]   The court does not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[51] "If the nonmovant fails to meet this burden, then summary judgment is appropriate."[52]

In reviewing the parties' submissions, the court does not "weigh the evidence or evaluate the credibility of witnesses."[53]   The court will consider only evidence in the record that would be admissible at trial.[54]   Summary judgment is appropriate when there is "a complete failure of proof concerning an essential element of the [nonmovant's] case."[55]

B.     *Section 1983 Claims*

Section 1983 provides a cause of action against "[e]very person who, under color of [law], subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution."[56]   Section 1983 claims "may be brought against persons in their individual or official capacity, or against a governmental entity."[57]   Plaintiff's suit only seeks damages against

---

[49] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted) (internal quotation marks omitted).

[50] *Spivey v. Robertson*, 197 F.3d 772, 774–75 (5th Cir. 1999) (citing *Anderson*, 477 U.S. at 248–49).

[51] *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

[52] *Tubacex*, 45 F.3d at 954.

[53] *Caboni v. Gen. Motors Corp.*, 278 F.3d at 451.

[54] *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).

[55] *Celotex*, 477 U.S. at 322.

[56] 42 U.S.C. § 1983.

[57] *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)).

Defendants, therefore, her suit is solely against Defendants in their individual capacities.[58]  In order to succeed in an individual-capacity action, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."[59]

Even if a section 1983 claim is fully proved, government officials sued in their individual capacity may still prevail on a defense of qualified immunity.  This defense requires a two part-test: "(1) whether the facts that a plaintiff has shown establish a violation of a constitutional right; and (2) whether the right was clearly established at the time of the defendant's alleged misconduct."[60]  The inquiry into whether a right was clearly established "requires an assessment of whether the official's conduct would have been objectively reasonable at the time of the incident."[61]

## III.    **DISCUSSION**

### A.    *Defendants' Motion*

Defendants' Motion was filed first, therefore, it will be evaluated first.  As Defendants have asserted qualified immunity, it is not enough for Plaintiff to adequately demonstrate constitutional violations.  In addition, those violations must have impinged on clearly established rights.

Before examining the merits of Plaintiff's claims, Plaintiff's arrest warrant should be analyzed. Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."[62]  "Probable cause to arrest an individual exists when the facts and circumstances within the arresting officer's personal knowledge, or of which he has reasonably trustworthy information, are

---

[58] *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.").

[59] *Id.* at 166.

[60] *Wilkerson v. Goodwin*, 774 F.3d 845, 851 (5th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

[61] *Id.* (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc))

[62] U.S. Const. amend. IV.

sufficient to occasion a person of reasonable prudence to believe an offense has been committed."[63]  In

reviewing an arrest warrant, probable cause is evaluated at the time an officer applied for the warrant.[64]

    Martinez applied for Plaintiff's arrest warrant on June 17, 2013.[65]  When he applied for the

warrant, there were numerous facts supporting the conclusion that Plaintiff had committed an offense.

Fernandez initially reported that Plaintiff was retaining a $300.00 deposit without providing services.

When a police officer called Plaintiff to follow up on Fernandez's report, she did not deny the

allegations.  Finally, Fernandez identified Plaintiff in a photo lineup as the one with whom he contracted.

Taken together, these facts constituted probable cause that Plaintiff had violated Tex. Penal Code § 32.42

by failing to provide Fernandez agreed-upon services.[66]

    Plaintiff argues Martinez could not have legally applied for a warrant, as he "was not one of the

people present at the scene at the time of the [offense], but present[ed his application] as if [he] was

present."[67]  Even if Martinez never personally witnessed an offense, he was authorized to rely on and

present someone else's information to receive an arrest warrant.[68]  Therefore, Plaintiff's argument fails.

    Only one potential deficiency remains.  Although the arrest warrant states it is supported by

Martinez's "written complaint under oath,"[69] Defendants have not included Martinez's sworn complaint

---

[63] *Bennett v. City of Grand Prairie*, 883 F.2d 400, 404 (5th Cir. 1989) (internal quotation marks and citations omitted).

[64] *Id.*

[65] Incident / Investigation Report 8.

[66] *See* Tex. Penal Code § 32.42(b)(2) ("A person commits an offense if in the course of business he intentionally, knowingly, recklessly, or with criminal negligence . . . sell[s] less than the represented quantity of a property or service . . . .").

[67] Third Am. Compl. 6.

[68] *See United States v. Burbridge*, 252 F.3d 775, 778 (5th Cir. 2001) ("An ordinary citizen's eyewitness account of criminal activity and identification of a perpetrator is normally sufficient to supply probable cause to stop the suspect.").

[69] Warrant Arrest.

with their Motion.  But even if documents supporting a warrant are lost, that "does not invalidate a warrant if competent evidence exists to prove the [documents'] contents."[70]

In an Incident / Investigation Report for the investigation, Martinez stated the judge who signed the arrest warrant read affidavits.[71]  The document also contains an unsigned "Complaint Affidavit," dated June 13, 2013 (four days before the warrant was signed), in which Martinez reiterates the facts of the case and states that Fernandez "ha[s] not had the [promised services] done by [the Francos] nor have they returned his money."[72]  Furthermore, the Incident / Investigation Report contains an unsigned "Witness/Sworn/Statement" from Fernandez, dated June 12, 2013 (five days before the warrant was signed), repeating his prior statements and attesting he successfully identified the Francos in photo lineups.[73]  Although these unsigned documents are not affidavits, they are competent to prove the contents of affidavits read by the judge who signed the arrest warrant, thereby validating the warrant.[74] For these reasons, Plaintiff's arrest warrant was valid.

### 1.    First Amendment Retaliation

To state a claim for First Amendment retaliation, Plaintiff must show: (1) she was engaged in constitutionally protected activity, (2) Defendants' actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) Defendants' adverse

---

[70] *United States v. Gibbs*, 421 F.3d 352, 358 (5th Cir. 2005) (citing *United States v. Lambert*, 887 F.2d 1568, 1571 (11th Cir. 1989)).

[71] Incident / Investigation Report 8

[72] *Id.* at 15–16.

[73] *Id.* at 10.

[74] *See Gibbs*, 421 F.3d at 358–59 (holding that an affiant's testimony as to his involvement with drug transactions at a defendant's residence, in conjunction with testimony that physical evidence of one of the transactions was included in a earlier affidavit, was sufficient to prove the existence and contents of the earlier affidavit underlying a search warrant for the residence).

actions were substantially motivated against her exercise of constitutionally protected conduct.[75]

Construing her pleadings liberally, Plaintiff advances two activities as constitutionally protected: sending Martinez an affidavit on May 16, 2013;[76] and questioning Kluge about documents and authority supporting his actions.[77]  After due consideration, neither of these activities supports an actionable claim.

### a.    Affidavit

With regard to her affidavit, the only retaliatory action Plaintiff has alleged is her arrest.  When a First Amendment retaliation claim is based on an arrest, a plaintiff must show the arrest lacked probable cause.[78]  As discussed above, Plaintiff's arrest was supported by probable cause.  Consequently, she has failed to establish a First Amendment retaliation claim in association with her affidavit.

### b.    Questioning Kluge

According to Plaintiff, she initially demanded from Kluge a certified copy of his oath of office, surety bond, and sworn complaint with supporting affidavits. Subsequently, Plaintiff stated she wanted to see an arrest warrant and the documents she had requested previously[79]  After removing Plaintiff from her vehicle, Kluge allegedly berated her multiple times for failing to exit her vehicle on his command.

As the Supreme Court has observed, "the First Amendment protects a significant amount of

---

[75] *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

[76] Plaintiff may be referring to an affidavit she signed on July 14, 2012.  Pl.'s Mot. TRO, Ex. B, "Affidavit of Status of Noemi Franco."

[77] First Am. Compl. 10 ¶ 29.

[78] *Cf. Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) ("This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause."); *Keenan*, 290 F.3d at 260 ("[R]etaliatory criminal prosecutions in violation of the First Amendment are actionable only if a plaintiff can also prove the common-law elements of malicious prosecution, including the absence of probable cause to prosecute.").

[79] After reviewing the applicable law, it appears Kluge was only required to show one document to her:  the arrest warrant.  Under Texas law, "upon request [the arresting officer] shall show the [arrest] warrant to the defendant as soon as possible."  Tex. Code Crim. Proc. art. 15.26.

13

verbal criticism and challenge directed at police officers."[80]  As Plaintiff was questioning Kluge about his

authority to order her from her vehicle, it is clear that Plaintiff was engaging in protected activity.

However, Plaintiff has shown no injury resulting from Kluge's conduct.  As the Fifth Circuit has

observed, "a retaliation claim requires some showing that the plaintiff['s] exercise of free speech has

been curtailed."[81]  Even a small curtailment is enough to support a retaliation claim.[82]  By Plaintiff's own

testimony, there is no indication she curtailed her questioning at all after Kluge yelled at her.  In fact,

Plaintiff asserts that after Kluge berated her, she continued to request documents not only from Kluge,

but also from Martinez, Lara, and other persons at the Petro station.[83]  Although Plaintiff asserts Kluge's

shouting made her afraid and intimidated,[84] there is no indication she curtailed her questioning in

response.  Because there is no evidence Plaintiff actually reduced her questioning in response to Kluge's

behavior,[85] Plaintiff has failed to demonstrate she suffered an actionable injury.  For these reasons,

Defendants are entitled to summary judgment on this claim.

>    2.    Seizure of Plaintiff's Person

Liberally construing Plaintiff's pleadings, Plaintiff contends she was subjected to an

unreasonable seizure both by being arrested and by Kluge removing her from her vehicle with excessive

force.  Plaintiff's arrest was supported by probable cause and carried out pursuant to an arrest warrant.

Therefore, it was presumptively reasonable.  However, even if it was reasonable to arrest Plaintiff,

---

[80] *City of Hous. v. Hill*, 482 U.S. 451, 461 (1987).

[81] *Keenan*, 290 F.3d at 252.

[82] *See id.* (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)) ("[S]ince there is no justification for harassing people for exercising their constitutional rights [the injury] need not be great in order to be actionable.").

[83] Pl.'s Aff. 2 ¶ 11.

[84] *Id.* ¶ 8.

[85] *Keenan*, 290 F.3d at 252.

Plaintiff's rights may have been violated through Kluge's use of excessive force.[86]  To succeed on an excessive force claim, a complainant must prove: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable."[87]

Plaintiff's excessive force claim rests on her own affidavit, in which she alleges Kluge pulled her from her vehicle and handcuffed her with such force that her right shoulder was dislocated and her right arm was bruised.  By contrast, Kluge has testified that his force was limited to "reach[ing] through the open [car] door and touch[ing] her wrist," after which Plaintiff "stepped out of her car [of] her own volition."[88]  Furthermore, Defendants have submitted a screening form, filled out on June 20, 2013 at 7:53 p.m. (just hours after Plaintiff's arrest), which notes Plaintiff did not report any serious injuries.[89]  This is inconsistent with Plaintiff's allegation that, just hours before the form was filled out, Kluge dislocated her right shoulder and bruised her right arm when removing Plaintiff from her vehicle.[90]

Although self-serving affidavits are competent evidence for summary judgment, they are disfavored means of creating a material fact issue.[91]  Nevertheless, "there is nothing wrong with self-

---

[86] *See Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) ("Freeman's excessive force claim is separate and distinct from her unlawful arrest claim, and we must therefore analyze the excessive force claim without regard to whether the arrest itself was justified.").

[87] *Bush v. Strain*, 513 F.3d 492, 500–01 (5th Cir. 2008).

[88] Defs.' Mot., "Declaration of Sergeant Jose Kluge," at 2, ECF No. 84-6.

[89] *Id.*, Ex. C, "Screening Form for Suicide, Medical and Mental Impairments," ECF No. 84-5.  Plaintiff was arrested at approximately 3:45 p.m. that day.  Incident / Investigation Report 9.

[90] Defendants have submitted another record with "CLMS NIOI" listed as a remark, which Defendants assert means "Claims No Illness or Injury."  Defs.' Mot., Ex. C, "El Paso County Sheriff's Office Booking Docket."

[91] *See DIRECTV, Inc. v Budden*, 420 F.3d 521, 531 (5th Cir. 2005) ("Budden's attempt to create a fact issue as to his knowledge by relying on a conclusory and self-serving affidavit is on unsteady ground."); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) ("[S]elf-serving allegations are not the type of significant probative evidence required to defeat summary judgment.") (internal quotation marks and citation omitted); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) ("A party's self-serving and unsupported claim that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud.").

serving affidavits . . . provided they are supported by the facts in the record."[92]

With her Response, Plaintiff has submitted two signed documents from Border Therapy Services,[93] stating Plaintiff was diagnosed with "shoulder and upper back pain," "bilat upper back pain,"[94] "parascapular rhomboid muscle pain,"[95] and "lower back pain."  However, Plaintiff has pled no facts linking the medical documents to her excessive force claim.  The earlier of the two documents is dated September 5, 2013, more than two months after Plaintiff's arrest, weakening the link to Plaintiff's claim.  Finally, nothing in the medical documents attributes Plaintiff's diagnoses to Plaintiff's June 20, 2013 arrest.  For these reasons, the documents are not probative of Plaintiff's excessive force claim.

The only allegations substantiating Plaintiff's excessive force claim are found in her affidavit, and these "are not the type of significant probative evidence required to defeat summary judgment."[96]  Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for excessive force.

3.  <u>Search of Plaintiff's Property</u>

Construing Plaintiff's Third Amended Complaint liberally, Plaintiff is asserting two searches form the basis of a section 1983 claim: (1) Lara "searching [Plaintiff's] vehicle and [one of her] purses, and going through all her personal documents and personal belongings" at the Petro station; and (2) Lara and Kluge "search[ing] and re[-]search[ing Plaintiff's] purses."[97]  Although Plaintiff's only evidence for her claim is her affidavit, Defendants have utterly failed to submit evidence contradicting the relevant

---

[92] James Wm. Moore et al., Moore's Federal Practice § 56.94[3] (3d ed. 2015); *see also Spring St. Partners–IV, L.P. v. Lam*, 730 F.3d 427, 441 n.7 (quoting Moore for this proposition).

[93] Pl.'s Resp., Ex. 1, ECF No. 87-1, at 16, 29.

[94] It is unclear whether "bilat" is short for "bilateral" or is referring to two latissimus dorsi muscles (often referred to as "lats").

[95] The rhomboid muscles are associated with the scapula, a shoulder bone.

[96] *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001).

[97] Pl.'s Aff. 2 ¶¶ 13, 17.

allegations.  Therefore, the allegations will be accepted as true for purposes of Defendants' Motion.

"It is well established that warrantless searches violate the Fourth Amendment" unless an exception to the warrant requirement applies.[98]  Although Defendants have submitted a copy of Plaintiff's arrest warrant, they have not submitted a copy of any search warrant.  To the extent no exception applied to Defendants' searches, Plaintiff has sufficiently alleged constitutional violations.

The pleadings do not specify all the property Defendants searched, and a distinction must be made between two kinds of property in this case:  (1) property on Plaintiff's person, and (2) Plaintiff's vehicle and its contents.  To the extent Plaintiff's belongings were on her person when she was arrested, they were legally searched.  It is well-settled that when a person is arrested, she is subject to search incident to her arrest and all belongings on her person are likewise subject to search.[99]  As Plaintiff has not indicated any circumstances meriting an exception to this rule, she has failed to state a claim regarding items on her person when she was arrested, thereby warranting summary judgment.

Searches of Plaintiff's vehicle and its contents, on the other hand, were not necessarily legal.  In *Arizona v. Gant*, the Supreme Court held police normally may not perform a warrantless search of a suspect's vehicle incident to an arrest unless:  (1) the suspect is unsecured and within reaching distance of the passenger compartment at the time of the search, or (2) police have reason to believe that the vehicle contains evidence of the offense of arrest.[100]  As *Gant* was decided four years before Plaintiff's June 20, 2013 arrest, *Gant*'s framework was clearly established at the time of the incident.

Plaintiff alleges she was handcuffed immediately after Kluge removed her from the vehicle and

---

[98] *United States v. Jaras*, 86 F.3d 383, 388 (5th Cir. 1996) (citing *United States v. Karo*, 468 U.S. 705, 717 (1984)).

[99] *United States v. Robinson*, 414 U.S. 218, 235 (1973).

[100] 556 U.S. 332, 343 (2009).

Dean Franco was secured in an officer's vehicle prior to her vehicle being searched.[101]  Furthermore, no evidence in the record indicates Plaintiff was near her vehicle while it was searched, and Defendants have not asserted they had reason to believe Plaintiff's vehicle contained evidence relating to a deceptive business practice.[102]

There is no evidence *Gant*'s exceptions applied to the search of Plaintiff's vehicle, and Defendants have not argued how summary judgment is nevertheless merited for Plaintiff's section 1983 claim.  Consequently, it is necessary to determine whether Plaintiff's allegations sufficiently state claims against Defendants individually, for searching her vehicle and its contents.

> a.      *Martinez*

Plaintiff's affidavit does not indicate Martinez ever searched her vehicle or its contents, nor does it indicate how Martinez is liable for another officer's search.  Because Plaintiff has not provided any evidence for her claim against Martinez, he is entitled to summary judgment on the claim.

> b.      *Lara*

According to Plaintiff's testimony, Lara searched her vehicle and its contents both when the vehicle was parked at the Petro station and when Plaintiff's purses were at the Sheriff's Department. Even though Plaintiff had been legally arrested, *Gant* demonstrates those searches may have violated the Fourth Amendment.

However, there is one piece of evidence favoring the legality of the searches.  According to the Incident / Investigation Report, when Plaintiff was arrested, her vehicle "was inventoried and impounded

---

[101] Pl.'s Aff. 2 ¶¶ 6, 12–14.

[102] Although Defendants asserted the vehicle's search "was for the purpose of ensuring officer safety and locating any evidence that might relate to the offense for which [Plaintiff] was being arrested," their Motion is not accompanied by any evidence that Plaintiff was near the vehicle when it was searched, or that they had reason to believe the vehicle contained relevant evidence.  "Original Answer and Affirmative Defenses of Defendants Jose A. Kluge, Oscar Martinez and Michael Lara" ("Defendants' Answer"), at 2 ¶ 5, ECF No. 17, filed Nov. 7, 2013.

at AD Wrecker for safekeeping."[103]  Inventory searches of lawfully impounded vehicles are constitutional, even without a search warrant.[104]  As Plaintiff was lawfully arrested, Lara's impoundment of the vehicle was lawful.[105]  Therefore, if Lara's searches were part of an inventory of the vehicle's contents, they were constitutional.

However, the Incident / Investigation Report does not address searches of Plaintiff's vehicle and its contents other than the one at AD Wrecker.  Plaintiff is not contesting any searches of her vehicle at AD Wrecker.  As the other searches form the basis of Plaintiff's claim against Lara, there is a factual dispute as to whether Lara inventoried Plaintiff's vehicle and its contents at either the Petro station or the Sheriff's Department.  Because Lara has not show that any of the *Gant* exceptions applied to those searches, they are reserved for the fact finder.  For these reasons, Lara is not entitled to summary judgment on this claim.

<em>c.</em>    <em>Kluge</em>

Plaintiff alleges Kluge searched her purses with Lara at the Sheriff's Department.  As no search warrant has been presented for those purses and Kluge has not shown how the searches were legal in the absence of a warrant, the search presumptively violated the Fourth Amendment.  Furthermore, *Gant* demonstrates the right Plaintiff is asserting was clearly established at the time of Plaintiff's arrest.  As Kluge has not presented any facts warranting qualified immunity, he is not entitled to summary judgment for the claim of searching Plaintiff's purses.

However, Plaintiff has not alleged Kluge searched her vehicle or any of its contents aside from the purses, and has likewise failed to demonstrate how Kluge is liable for Lara's search of her vehicle

---

[103] Incident / Investigation Report 9.

[104] *South Dakota v. Opperman*, 428 U.S. 364, 373–76 (1976).

[105] *See United States v. Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980) ("The arresting officers took custody of a vehicle which would otherwise have been left unattended, possibly for an extended period of time . . . .  They had both the right and the duty to protect that automobile . . . .").

and its contents.  Accordingly, Kluge is entitled to summary judgment on the remainder of this claim.

           4.    <u>Seizure of Plaintiff's Property</u>

                *a.*    *Property on Plaintiff's Person*

The Fourth Amendment imposes the same reasonableness standard on seizures of property as it does on searches.[106]  As discussed previously, the searches of Plaintiff's property on her person complied with the Fourth Amendment.  Similarly, seizures of Plaintiff's property on her person are presumptively reasonable because they were incident to a lawful arrest.[107]  For this reason, Plaintiff has not adequately supported her claim for seizing property on her person, and Defendants are entitled to summary judgment on the claim.

                *b.*    *Plaintiff's Vehicle*

Although the search of Plaintiff's vehicle may have been unconstitutional, this conclusion does not hold for the *seizure* of Plaintiff's vehicle.  According to the Incident / Investigation Report, Plaintiff's vehicle was impounded.[108]  Plaintiff concedes that the impoundment was consistent with Sheriff's Department policies and procedures.[109]

Vehicle impoundments, such as the one challenged by Plaintiff, are constitutional without a warrant if they are "carried out in furtherance of a community caretaking function."[110]  "In determining whether this exception applies, [the] constitutional analysis hinges upon the reasonableness of the 'community caretaker' impound viewed in the context of the facts and circumstances encountered by the

---

[106] *See* U.S. Const. amend. IV (protecting "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures").

[107] *United States v. Ho*, 94 F.3d 932, 935 (5th Cir. 1996).

[108] Incident / Investigation Report 9.

[109] *See* Pl.'s Mot. 3 (asserting that Defendants' Fourth Amendment violations "were committed pursuant to a custom[,] practice[,] or policy").

[110] *United States v. Castro*, 166 F.3d 728, 734 (5th Cir. 1999) (en banc) (per curiam).

officer[s].”[111]

The Fifth Circuit's evaluation of a vehicular impoundment in *United States v. Staller* is particularly instructive for this case:

> "[T]he automobile's owner . . . had just been arrested . . . and taken to jail.  The owner had no friend or relative available to take care of the car, as his only travelling companion had also been arrested.  The officers who made the arrest had every reason to expect that [the defendants] would be separated from their vehicle for an extended period of time.  Although [the defendant's] vehicle was lawfully parked and presented no apparent hazard to public safety, the officers were aware that a car parked overnight in a mall parking lot runs an appreciable risk of vandalism or theft.  The likelihood of such harm would increase with every passing day.  Under these circumstances taking custody of [the defendant's] car was a legitimate exercise of the arresting officer's community caretaking function."

This case's vehicular seizure is similar to the one the Fifth Circuit considered in *Staller*.  Plaintiff had been arrested, and her only companion who could take care of the vehicle (Dean Franco) was also under arrest.[112]  Plaintiff and Dean Franco were placed in jail after their arrests, consequently, it was likely the car would be unattended for an extended time.[113]  Even assuming Plaintiff's vehicle was legally parked at the Petro station, this would not render the seizure invalid, as *Staller* makes clear.

Unlike *Staller*, no one is asserting the Petro station was an unsafe place to park a vehicle for an extended time.  However, because the Petro station was open to the public, Plaintiff's vehicle was inherently at risk of damage or theft.[114]  As the facts of the contested seizure are analogous to those

---

[111] *United States v. McKinnon*, 681 F.3d 203, 208 (5th Cir. 2012) (per curiam).

[112] Although Defendants did not attach Dean Franco's arrest warrant to their Motion, Martinez testified he drafted an arrest warrant for Dean Franco and a judge signed the warrant.  Decl. Oscar Martinez 2.  As there is no evidence indicating Dean Franco was arrested without an arrest warrant, the court finds Dean Franco's arrest was reasonable.

[113] *See* Incident / Investigation Report 9 (stating Plaintiff and Dean Franco were booked into jail approximately four hours after their arrest").

[114] *See United States v. Ponce*, 8 F.3d 989, 996 (5th Cir. 1993) ("By impounding [the defendant]'s brother-in-law's truck, Officer Nichols ensured that the truck was not left in a public parking lot . . . where it could have been damaged or stolen.").

evaluated by the *Staller* court, the seizure did not violate the Fourth Amendment.[115]  Plaintiff has failed to

support her section 1983 claim against Defendants for unconstitutional seizure of her vehicle, and

therefore, it should be dismissed with prejudice.

*c.*       *Plaintiff's Vehicle's Contents*

Plaintiff has evinced two additional seizures that were not of property on her person:  1) Lara's

taking possession of her vehicle's contents in order to search them, and 2) Lara and Kluge possessing

Plaintiff's purses at the Sheriff's Department.[116]

i.       <u>Martinez</u>

As with the searches of Plaintiff's property, Plaintiff has not testified Martinez seized her

vehicle's contents, nor has she provided any basis for holding him liable for someone else seizing that

property.  Consequently, Martinez is entitled to summary judgment on this claim.

ii.       <u>Lara</u>

Plaintiff's testimony about Lara's search of her vehicle's contents, as well as Lara's and Kluge's

subsequent searches of her purses, creates a prima facie case for her Fourth Amendment claim for

unconstitutional seizures.  Lara has advanced no arguments as to how the associated seizures of the

vehicle's contents were constitutional.[117]  Therefore, the record adequately supports Plaintiff's Fourth

Amendment claim against Lara for unconstitutional seizures of her vehicle's contents.

---

[115] *See United States v. Vernon*, 511 Fed. App'x 318, 322 (5th Cir. 2013) (per curiam) (unpublished) (citing *McKinnon*, 681 F.3d at 208–09; *Staller*, 616 F.2d at 1289–90; *United States v. Ducker*, 491 F.2d 1190, 1192 (5th Cir. 1974)) ("We need spend little time on Vernon's argument that the original impoundment of his vehicle was an unconstitutional seizure.  We have held on numerous occasions that impoundment of an arrestee's vehicle under [circumstances similar to *Staller*] is permissible under the 'community caretaking' exception.").

[116] This assumes the purses were removed from Plaintiff's vehicle.

[117] Although there are some bases for seizing a vehicle without a warrant, none are advanced by Defendants' Motion.  *See United States v. Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980) ("The arresting officers took custody of a vehicle which would otherwise have been left unattended, possibly for an extended period of time . . . .  They had both the right and the duty to protect that automobile . . . .").

22

iii.    Kluge

Plaintiff has testified Kluge possessed her purses while searching them.[118]  In addition, Kluge has not provided any justification for seizing Plaintiff's purses without a search warrant.  Plaintiff's testimony supports her claim against Kluge for seizing her purses, and Plaintiff's asserted right was clearly established at the time of her arrest.  As no evidence warrants qualified immunity, Kluge is not entitled to summary judgment on Plaintiff's claim for seizing her purses.

However, Plaintiff has not presented any evidence Kluge seized her vehicle's contents other than the purses.  For this reason, Kluge is entitled to summary judgment on the remainder of Plaintiff's claim for seizure of property.

B.    *Plaintiff's Motion*

Plaintiff's remaining claims are against Lara and Kluge for the search of her vehicle and for the searches and seizures of the vehicle's contents.  In evaluating Plaintiff's Motion, all of the facts have to be viewed in the most favorable light to Defendants.  In doing so, it is clear Plaintiff is not entitled to summary judgment for any of her remaining claims.  Plaintiff has not specifically alleged which property (including her purses) was in the vehicle when she was arrested, therefore, the details of Plaintiff's contents-related claims are for the fact finder.  In addition, it is not clear whether the searches were permitted by an exception to the Fourth Amendment's warrant requirement.[119]  Finally, as Plaintiff might not be able to show actual injury based on the searches and seizures of her property, she may be entitled

---

[118] Even if Kluge directly took possession of the purses from Lara instead of Plaintiff, this could constitute a seizure for Fourth Amendment purposes.  *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984) ("A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property.").

[119] *See, e.g.*, *Gant*, 556 U.S. at 351 ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."); Defs.' Answer 2 ¶ 5 (asserting a search after Plaintiff's arrest "include[d] those items . . . in her immediate reach within the car she was sitting in at the time of her arrest" and "was for the purpose of . . . locating any evidence which might relate to the offense for which she was being arrested").

only to nominals damages[120] rather than the comprehensive damages she seeks.[121]  As there are questions

of fact about the remaining claims, Plaintiff's Motion should be denied.

        C.     *Plaintiff's Supplemental Brief*

        One more matter should be discussed.  On March 20, 2015, the parties were ordered to provide

supplemental briefing on qualified immunity.[122]  The text of Plaintiff's Supplemental Brief contains only

minimal discussion of qualified immunity.[123]  Furthermore, that discussion appears to have been

transferred, almost word-for-word, from Plaintiff's earlier filings.[124]  Therefore, Plaintiff's Supplemental

Brief contained no new information on qualified immunity.

        Plaintiff's Supplemental Brief includes an attachment.  The attachment is partly comprised of

several affidavits, included in earlier filings, which do not provide any new analysis of qualified

immunity.  The remainder of the attachment is a 24-page document completely unrelated to the case.

The document does not discuss qualified immunity, making it unresponsive to the court's order.

        On the whole, Plaintiff's Supplemental Brief did not offer additional analysis on Plaintiff's

behalf.

## IV.    <u>CONCLUSION</u>

        Allegations of constitutional violations and assertions of qualified immunity are primarily issues

---

[120] Although Plaintiff has not specifically requested nominal damages from Defendants, her Original Complaint sought "[s]uch other relief as [the] Court may find to be just and proper."  Original Compl. 15.  As Plaintiff is *pro se*, her filings can be construed liberally to include a request for nominal damages.

[121] *See Carey v. Piphus*, 435 U.S. 247, 266–67 (1978) (upholding the availability of nominal damages for a section 1983 claim in the absence of actual injury, but limiting nominal damages to one dollar in the case at hand).

[122] "Order to Provide Supplemental Briefing," ECF No. 88.

[123] Pl.'s Supp. Br. 2, 4.

[124] *Compare*  Pl.'s Supp. Br. 2, 4, *with* "Plaintiff's Response to Original Answer and Opposition to Affirmative Defenses of Defendants Jose A. Kluge, Oscar Martinez and Michael Lara," at 6–7, ECF No. 20, filed Nov. 20, 2013, *and* Pl.'s Mot. 2–3.

of law rather than fact.[125]  However, material fact issues remain unresolved by the parties' motions. These are:  (1) whether the contested warrantless searches and seizures actually occurred,[126] (2) whether Plaintiff and Dean Franco were secured or beyond reaching distance of her vehicle's passenger compartment when Lara searched the vehicle, (3) whether the contested searches were inventory searches, (4) which belongings searched by Lara at the Petro station were found in Plaintiff's vehicle, (5) whether the searched purses were removed from Plaintiff's vehicle, (6) whether Plaintiff suffered actual injury from Lara's and Martinez's constitutional violations, and (7) what damages Plaintiff is entitled to. Consequently, a trial is necessary.

For the above-stated reasons, Defendants Jose A. Kluge, Oscar Martinez, and Michael Lara's "Defendants' Motion for Summary Judgment" [ECF No. 84] is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff Noemi Franco's "Plaintiff's Motion & Notice of Motion for Summary Judgment" [ECF No. 85] is **DENIED**.  Accordingly,

1.   All of Plaintiff's claims against Oscar Martinez pursuant to section 1983 are

     **DISMISSED WITH PREJUDICE**;

2.   Plaintiff's section 1983 claims against Jose A. Kluge for First Amendment retaliation,

     unconstitutional seizure of her person, unconstitutional searches and seizures of property

     on her person, and unconstitutional search and seizure of her vehicle and its contents

     (excluding Plaintiff's purses) are **DISMISSED WITH PREJUDICE**;

3.   Plaintiff's section 1983 claims against Michael Lara for First Amendment retaliation,

---

[125] *See Elder v. Holloway*, 510 U.S. 510, 516 (1994) ("Whether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law . . . .").

[126] Although Defendants concede they carried out some searches and seizures following Plaintiff's arrest, they do not specifically concede they engaged in the vehicular and purse searches to the extent Plaintiff alleges.  *See* Defs.' Answer 2 ¶ 5 ("Defendants admit that they conducted a search incident to the arrest of Plaintiff, to include those items carried on her person and in her immediate reach within the car she was sitting in at the time of her arrest.").

unconstitutional seizure of her person, unconstitutional searches and seizures of property on her person, and unconstitutional seizure of her vehicle are **DISMISSED WITH PREJUDICE**;

4.      Defendants' Motion to dismiss Plaintiff's section 1983 claims against Michael Lara for unconstitutional search of Plaintiff's vehicle and unconstitutional search and seizure of the contents of Plaintiff's vehicle is **DENIED**; and

5.      Defendants' Motion to dismiss Plaintiff's section 1983 claims against Jose A. Kluge for unconstitutional search and seizure of Plaintiff's purses is **DENIED**.

**SO ORDERED**.

**SIGNED** this **13th** day of **April, 2015**.

_____

**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**

26